IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-35600 |
| **ASAIG, LLC**, *et al*., | § | |
| | § | Chapter 11 |
| Debtors.[1] | § | |
| | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION
WAGES TO EMPLOYEES AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED.**
>
> **IF YOU OBJECT TO THE REQUESTED RELIEF OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST FILE A WRITTEN RESPONSE PRIOR TO THE BELOW DATE BY WHICH RELIEF IS REQUESTED. OTHERWISE, THE COURT MAY TREAT THE REQUEST AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES" THEN "VIEW HOME PAGE" FOR JUDGE**

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Aztec / Shaffer, LLC (2038); and ASAIG, LLC (2323). The Debtors' service address is: 601 W. 6th Street, Houston, Texas 77007.

> **ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS, AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 25, 2020.**

ASAIG, LLC, *et al.*, the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Pay Prepetition Wages to Employees and (II) Granting Related Relief* (the "Motion") and in support hereof, respectfully state as follows:

## I.     JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested this Motion are sections 105(a), 363(b) and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4002-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II.     BACKGROUND

**A.     The Previous Bankruptcy Case**

3. These cases (the "Chapter 11 Cases") commenced on November 17, 2020 (the "Petition Date"), when ASAIG, LLC ("ASAIG") filed a voluntary petition for relief under

2

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). At the same time, ASAIG directed its subsidiary Aztec / Schaffer, LLC ("Aztec," and, collectively, with ASAIG, the "Debtors") to also seek chapter 11 relief.

4. Prior to the commencement of the Chapter 11 Cases, Cortland Capital Market Services LLC ("Cortland") as collateral agent for certain of the Debtor's pre-petition secured lenders, including American General Life Insurance Company ("American Life"), The Variable Annuity Life Insurance Company ("Variable"), and American Home Assurance Company ("American Home", and collectively with American Life and Variable, the "AIG Lenders," and collectively with Cortland, the "First Lien Lenders"), exercised certain remedies under the applicable pre-petition loan documents to effectuate a change in the management of Aztec.

5. The First Lien Lenders challenged the filing of Aztec's initial bankruptcy petition, and, on November 23, 2020, this Court struck Aztec's petition. In so ruling, however, the Court also ruled that the automatic stay, effective in ASAIG's Chapter 11 Case, prevented the First Lien Lenders from continuing to assert management control over Aztec.

6. On November 24, 2020, after failing to make substantive progress regarding negotiations with the First Lien Lenders, ASAIG filed its *Emergency Motion for Order Pursuant to §§ 105 and 363 of the Bankruptcy Code Authorizing the Debtor-in-Possession to Take Actions Necessary to Preserve Property of the Estate* [ECF # 7] (the "Preservation Motion"). The Court granted the Preservation Motion by oral ruling on November 24, 2020 (the "Preservation Order").

7. Following entry of the Preservation Order, ASAIG's principals met with principals of the First Lien Lenders and Texas Capital Bank, N.A. ("TCB"). Throughout the

3

day, ASAIG continued to negotiate with the First Lien Lenders in an effort to reach agreement regarding funding this business – most pressingly, funding needed to meet certain payroll obligations, the Employee Obligations, already incurred by the Debtor – but were unable to reach an agreement.

8.  In the absence of an agreement involving the First Lien Lenders, TCB agreed to advance funds sufficient to pay incurred and owing Employee Obligations, provided that Aztec commence a new chapter 11 case. With no other viable options, ASAIG directed the manager of Aztec to accept TCB's proposal – at which time the manager resigned. ASAIG, pursuant to the Preservation Order, has appointed a replacement manager and authorized the second Aztec chapter 11 petition.

9.  Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

**A.     The Debtors' Employees**

10. The Debtors maintain a large staff to support their businesses and service the projects and events for their clientele across the country. Specifically, the Debtors have approximately two hundred thirty five (235) full-time employees (collectively, the "Employees"). The types of Employees include directors and officers, administrative staff, operational staff, sales and client account managers, field personnel, and other support staff. Except for the field personnel who are deployed to various national events to oversee and complete projects, each of the Employees work at the Debtors' offices and warehouse in Houston, Texas. The vast majority of the Employees rely exclusively on their compensation and

benefits to pay their daily living expenses and support their families. Thus, Employees would be exposed to significant financial hardship if the Debtors were not permitted to continue paying their compensation, providing benefits, and maintain existing programs. Consequently, the relief requested in this Motion is necessary and appropriate.

11. The Debtors utilize the services of a professional employment organization, ADP, LLC ("ADP"), to process payroll, and employee benefit plans are administered through United Health Care. The Debtors submit a net amount of money to ADP prior to the conclusion of each pay period, who then administers all of the Debtors' obligations incurred or related to wages, salaries, payroll taxes, and payroll service fees. Employees are paid bi-monthly via direct deposit from ADP. A description of which Employees are owed wages, their classification, rates of pay, and the approximate amounts owed are listed in the payroll analysis attached hereto as **Exhibit A**.[2] Collectively, the Employees are paid approximately $500,000 per month. Thus, because the Debtors' Petition Date fell between pay periods, the estimated prepetition amounts listed in **Exhibit A** represent only a portion of the total amount owed to Employees through the end of the pay period.

### III. RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of an order, substantially in the form submitted herewith: (i) authorizing, but not directing, the Debtors to: (a) pay, in their sole discretion, subject to and consistent with the terms of any cash collateral and/or debtor-in-possession financing order entered and accompanying budget approved by the Court in these Chapter 11 Cases, all obligations incurred under or related to wages, salaries, other compensation, reimbursable employee expenses, and payroll service fees relating to Employees

---

[2] The Debtors reserve the right to amend or supplement **Exhibit A** at or before the hearing on this Motion, as necessary to provide accurate information.

(collectively, the "Employee Obligations") and all costs related to the foregoing, and (b) maintain and continue to honor their practices, programs, and policies in place for their Employees, as such may be modified, amended, or supplemented from time to time in the ordinary course of business; and (ii) authorizing and directing the Debtors' banks, other financial institutions, and professional employment organizations, including ADP and Texas Capital Bank, N.A. ("TCB"), as applicable, to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the Employee Obligations.

### IV.  BASIS FOR RELIEF REQUESTED

**A.  Certain Employee Obligations are Entitled to Priority Treatment**

13. Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims of Employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days of the petition date are granted priority unsecured status up to $13,650 per employee. 11 U.S.C. § 507(a)(4)(A). Additionally, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to employee benefit plans are also afforded priority unsecured status up to $13,650 per employee covered by applicable benefits plans, less any amount paid pursuant to section 507(a)(4). 11 U.S.C. § 507(a)(5)(A).

14. The prepetition Employee Obligations shown in **Exhibit A** constitute priority claims under sections 507(a)(4) or (5) of the Bankruptcy Code. To the extent such claims are afforded priority status, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan). As priority claims, the Employee Obligations are entitled to payment in full before any general unsecured claims asserted against

6

the Debtors can be satisfied and would be entitled to payment in full under any plan of reorganization. 11 U.S.C. § 507(a)(8).

B. **Payment of Payroll Taxes and Deductions Is Required by Law.**

15. The Debtors also seek authority to continue paying, through ADP, the payroll taxes and deductions to the appropriate entities. These liabilities are all included in the amounts submitted to ADP each pay period for payroll processing. These amounts principally represent Employees' earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Certain deductions, including Employees' contributions to the employee benefit plans, are not property of the Debtors' estates because they have been withheld from Employees' paychecks on behalf of another party. *See* 11 U.S.C. § 541(b). Further, federal and state laws require the Debtors and their officers to remit certain tax payments that have been withheld from Employees' paychecks. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between the debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the deductions and payroll taxes are not property of the Debtors' estates, the Debtors request that this Court authorize them to remit the deductions and payroll taxes to the proper parties in the ordinary course of business.

C. **Ample Authority Exists to Authorize the Debtors to Honor Employee Obligations.**

16. Courts generally acknowledge that it is necessary to authorize payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g., In re*

7

*Ionosphere Clubs, Inc.*, 98 B.R. 174-75 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. Jones A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). As set forth herein, in authorizing payments of certain prepetition obligations, including Employee Obligations, courts have relied on several legal theories, based on sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.

17. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business' going-concern value." *Id*. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only … by the preplan satisfaction of a prepetition claim." *Id*. The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate …." *Id.*; *See also In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of their business judgment … in order for [the d]ebtors to continue their respective businesses").

18. This Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have long recognized that, where a sound business

justification can be articulated, payment of prepetition claims under sections 363(b) of the Bankruptcy Code is permitted. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to sections 363(b) of the Bankruptcy Code; relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions."); *see also Armstrong*, 29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

19. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts generally recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule, where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. at 487 ("[I]t is only logical that the bankruptcy court be able to use § 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."). Under section 105(a), courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation

of the debtor's business and, in particular, when nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionospehere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

20. Courts have further recognized the importance of employees to a debtor's reorganization and the severe harm to employees that can arise if courts do not grant motions such as this one. *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (approving payment of prepetition employee wage claims to the vital roles employees play in the debtor's reorganization). As a result, courts regularly grant motions to pay prepetition employee wages and honor employee benefits when the employees' continued efforts are necessary to a debtor's effective reorganization. *See, e.g., In re The Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ), et al.*, Chapter 11 Case No. 04-50948 (Bankr. W.D. Tex. Feb. 18, 2004; *In re JIT Holdings, Inc.*, Chapter 11 Case No. 02-21102 (Bankr. S.D. Tex. May 24, 2002); *In re Kitty Hawk, Inc.*, Case No. 00-42141-BJH (Bankr. N.D. Tex. May 4, 2000).

21. Accordingly, pursuant to sections 105(a), 363(b), and 1108 of the Bankruptcy Code, this Court is empowered to grant the relief requested herein and such relief is necessary, in the Debtors' discretion and business judgment, in order to prevent harm to the Debtors' businesses.

22. In addition to wages and reimbursable expenses, the continued submission to ADP and payment of payroll taxes similarly will not prejudice other creditors of the Debtors'

estates as the relevant taxing authorities will generally hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to payroll taxes. Moreover, the portion of the payroll taxes withheld from an Employee's wages on behalf of the applicable taxing authority are held in trust by the Debtors, and thus, are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g., Begier v. IRS*, 496 U.S. 53, 62-63 (1990) (holding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtors' estates); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96–97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes).

23. Failure to remit payroll taxes to a taxing authority may give rise to personal liability for the Debtors' officers and directors. 26 U.S.C. § 6672; s*ee In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (explaining that a failure to pay trust fund taxes may give rise to personal liability for a company's officers). As such, remittance of amounts to ADP sufficient to cover payment of payroll taxes is reasonable and in the best interest of the Debtors' estates and all parties in interest. In addition, ADP withholds federal and state taxes from the salaries of the Employees when such salaries are submitted by the Debtors during the applicable pay period. Thus, the Debtors seek authority to continue paying, through ADP, any local, state and federal withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, all withholding taxes, Social Security taxes and Medicare taxes.

24. For the reasons set forth above, the Debtors respectfully submit that it is in the best interests of their estates for the Court to authorize the Debtors to pay the Employee Obligations, and for ADP to allow the payment of the Employee Obligations.

## V.    BASIS FOR EMERGENCY RELIEF

25.    The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, which authorizes a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could cause irreparable harm. Furthermore, the Debtors' next payroll date is November 27, 2020. Thus, the failure to receive the requested relief would severely disrupt the Debtors' operations at this critical juncture and imperil the Chapter 11 Cases. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VI.    RESERVATION OF RIGHTS

26.    Nothing contained herein shall be deemed: (i) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors; (ii) an impairment or waiver of the Debtors' or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property or its estate; (iii) a promise or requirement to pay any prepetition claim; (iv) a waiver of any claims or causes of action which may exist against any Employee, taxing authority, benefit service provider, or benefits provider; (v) an assumption, adoption, or rejection or any agreement, contract, or lease under section 365 of the Bankruptcy Code; (vi) an implication or admission that any particular claim of a type specified or defined in this Motion, or any order granting the relief requested by this Motion; (vii) an implication, admission, or finding as to (a) the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate or (b) the applicability of any exception or exclusion from

property of the estate under section 541 of the Bankruptcy Code or other applicable law; (viii) an impairment or waiver of any claims or causes of action which may exist against any entity; or (ix) a waiver of any Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## VII.  REQUEST FOR WAIVER OF STAY

27.  To the extent that the relief sought in this Motion constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors requests that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate its business and preserve the value of the estate.

## VIII.  NOTICE

28.  Notice of this Motion has been provided by telecopy, email, overnight courier and/or hand delivery, to: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the Debtors' prepetition secured lenders, Texas Capital Bank, N.A. and AIG Asset Management (U.S.), LLC; (iii) the collateral agent and administrative agent for the prepetition secured lenders, Cortland Market Services LLC; (iv) the 30 largest unsecured creditors of each of the respective Debtors (as found on Official Form 204); (v) the Internal Revenue Service; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9014, the Bankruptcy Local Rules and the Complex Case Procedures.  The Debtors submit that no other or further notice need be provided.

## IX.     PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) granting the relief requested in this Motion; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted this 25th day of November, 2020.

                                            **OKIN ADAMS LLP**

                                            By:      /s/ *Matthew S. Okin*
                                                 Matthew S. Okin
                                                 Texas Bar No. 00784695
                                                 Email: mokin@okinadams.com
                                                 David L. Curry, Jr.
                                                 Texas Bar No. 24065107
                                                 Email: dcurry@okinadams.com
                                                 Ryan A. O'Connor
                                                 Texas Bar No. 24098190
                                                 Email: roconnor@okinadams.com
                                                 1113 Vine St., Suite 240
                                                 Houston, TX  77002
                                                 Tel: (713) 228-4100
                                                 Fax: (888) 865-2118

                                            **PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify to the accuracy of the matters set forth in the foregoing Motion.

                                            By:      /s/ *Matthew S. Okin*
                                                 Matthew S. Okin